UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Block Communications, Inc., *et al.*,  Case No. 3:18-cv-1315

    Plaintiffs,

v.  MEMORANDUM OPINION
AND ORDER

Moorgate Capital Partners, LLC, *et al.*,

    Defendants.

## I. INTRODUCTION

Plaintiffs and Counterclaim Defendants Block Communications, Inc. and BCI Mississippi Broadband, LLC, (collectively, "BCI"), filed a motion to disqualify Houlihan Lokey as the third party valuation firm determining the Terminal Company Enterprise Value as required by the parties' Management Agreement. (Doc. No. 115). Defendants Moorgate Capital Partners, LLC, Moorgate Securities, LLC, and Defendant-Counterclaim Plaintiff LMC Southeast Cable Partners, LLC, (collectively, "Moorgate"), filed a brief in opposition to the motion. (Doc. No. 116). BCI filed a brief in reply. (Doc. No. 117).

Counsel for the parties appeared for oral argument on June 27, 2023. At the conclusion of that hearing, I ruled that BCI had not met its burden to show Houlihan Lokey should be disqualified and denied its motion. As indicated during the hearing, this Memorandum Opinion and Order follows.

## II.  BACKGROUND

Prior motion practice in this case led to the entry to summary judgment in Moorgate's favor on most of the claims at issue.  I previously summarized the relevant case history:

> On March 1, 2021, I granted summary judgment in favor of Defendants Moorgate Capital Partners, LLC, Moorgate Securities, LLC, and Defendant-Counterclaim Plaintiff LMC Southeast Cable Partners, LLC, as to each claim in Plaintiffs-Counterclaim Defendants Block Communications, Inc. and BCI Mississippi Broadband, LLC's complaint, except the portion of Count X which seeks appointment of a third party valuation firm, and as to the portion of LMC SE's counterclaim which asserts BCI breached the Management Agreement by failing to participate in the selection process for the third party valuation firm.  (Doc. No. 70).
>
> The Management Agreement provides that if the parties are unable to agree on the Terminal Company Enterprise Value of MaxxSouth for purposes of determining the Incentive Fee, "an independent third party valuation firm" shall determine the Terminal Company Enterprise Value "based upon an analysis of the recent prices paid by purchases of similar companies under similar circumstances."  (Doc. No. 49-8 at 33).
>
> I ordered the parties to "identify three valuation firms and exchange the names of those firms, ranked in order of preference, on or before April 15, 2021," and stated that if "the parties are unable to agree upon a firm, the parties' first-ranked choices shall select the third-party valuation firm which shall conduct the valuation.  That valuation shall constitute the Terminal Company Enterprise Value and shall be used to calculate the Incentive Fee."  (Doc. No. 70 at 23).
>
> Neither the parties nor their first-ranked choices were able to agree on a third-party valuation firm.  Pursuant to my order, the parties submitted the names of potential evaluators as well as arguments in support of their proposed candidates.  [(*See* Doc. No. 75).]

(Doc. No. 100 at 1-2).

I then reviewed the parties' proposals and selected Houlihan Lokey, an investment bank and financial services organization, as the third party valuation firm.  (*Id.* at 3-4).  Houlihan Lokey accepted the appointment, and the parties executed an engagement agreement in June 2022, after I resolved several disputes among the parties regarding certain terms of the agreement.  (Doc. Nos. 104 and 106).

2

On May 2, 2023, BCI moved to disqualify Houlihan Lokey, arguing it had learned of "a serious ethical concern" involving Houlihan Lokey and Moorgate Capital Partners. The parties agree on the relevant facts leading to this dispute.

Chuck Wiebe previously was a managing director at a company called MVP Capital. Houlihan Lokey acquired MVP Capital in August 2020, at which point Wiebe and several other individuals from MVP Capital, including Jason Hill and Wayne Harrington, joined Houlihan Lokey. Hill and Harrington are part of the Houlihan Lokey team performing the valuation process to determine the Terminal Company Enterprise Value. Wiebe, the parties agree, was not a part of that valuation team.

Wiebe ended formal employment with Houlihan Lokey on July 31, 2022. He remained as a consultant until October 31, 2022. At some point in late 2022, Wiebe reached an agreement to join Moorgate Capital Partners. Moorgate publicly announced the hiring on December 1, 2022, though it did not provide BCI with direct notice of the circumstances of Wiebe's hire until March 2023.

### III.  DISCUSSION

BCI contends Houlihan Lokey should be disqualified because it is "performing a judicial function on behalf of the Court[ and] it is held to the same high ethical standards that apply to judges, magistrates, special masters[,] and other neutral decision-makers involved in the judicial process." (Doc. No. 115-1 at 2). In BCI's view, the appropriate standard to be applied is whether Houlihan Lokey's "impartiality might reasonably be questioned" due to Wiebe's move to Moorgate Capital. 28 U.S.C. § 455(a).

I am not convinced BCI's characterization of Houlihan Lokey's role is correct. After all, I ordered the parties to request that Houlihan Lokey accept an appointment as the valuation firm <u>only after</u> the parties were unable to reach agreement on an appropriate firm initially as required by their contract <u>and then</u> as required by my order requiring specific performance of the contract. This is

3

not a circumstance in which the parties consented to court-assisted mediation, but one in which the parties left me with no option but to order that they comply with the terms of their contract.

But, even if I assume § 455(a) provides the applicable standard, I conclude BCI has not shown the facts create an appearance of impropriety or bias. Accepting for the sake of BCI's position that Houlihan Lokey is performing a judicial function, these circumstances are substantially similar to those confronting the court in *Crawford v. Marriott Hotel Servs., Inc.* No. 1:19-CV-02687-CAP, 2020 WL 13594983 (N.D. Ga. Oct. 28, 2020) *aff'd sub nom. Crawford v. Marriott Int'l, Inc.*, No. 21-11647, 2021 WL 5054442 (11th Cir. Nov. 1, 2021). In that case, the plaintiff argued the assigned judge should recuse himself from the case because the judge's former law clerk was now employed by the law firm representing the defendant. *Crawford*, 2020 WL 13594983, at *5. The Eleventh Circuit affirmed the district judge's decision not to recuse because the fact that the judge's former law clerk worked for the defense firm did not create an appearance of partiality where the former clerk had no role in the litigation. *Crawford*, 2021 WL 5054442, at *5.

Counsel for Moorgate represented Wiebe had no awareness of or involvement in this valuation while at Houlihan Lokey, and he has not had any involvement while with Moorgate. While disclosure at an earlier point out of an abundance of caution may have been preferrable, I conclude the facts in the record do not establish any connection between Wiebe and the valuation process, other than he worked with the people performing the analysis while he was a member of MVP Capital. And, because the facts do not establish any connection between Wiebe and the work of the valuation team at Houlihan Lokey, I conclude no objective observer would reasonably question Houlihan Lokey's impartiality.

## IV. CONCLUSION

For the reasons stated above and on the record during the June 27, 2023 hearing, I deny BCI's motion to disqualify Houlihan Lokey. (Doc. No. 115).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge