## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| BLOCK COMMUNICATIONS, INC., *et al.*, | ) ) ) | Case No. 3:18-cv-01315-JJH |
|     Plaintiffs-Counterclaim Defendants, | ) ) ) | Judge Jeffrey J. Helmick |
| v. | ) ) ) | **MOTION TO STAY VALUATION PENDING APPEAL, WITH MEMORANDUM IN SUPPORT** |
| MOORGATE CAPITAL PARNTERS, LLC, and MOORGATE SECURITIES, LLC, | ) ) ) ) | |
|     Defendants, | ) ) | |
| and | ) ) | |
| LMC SOUTHEAST CABLE PARTNERS, LLC, | ) ) ) | |
|     Defendant-Counterclaim Plaintiff. | ) ) | |

\*    \*    \*

## MOTION TO STAY

Plaintiffs Block Communications Inc. and BCI Mississippi Broadband, LLC respectfully move under Fed. R. Civ P. 62(d) for an order staying the Houlihan Lokey valuation process, pending Plaintiff's appeal of the Court's July 7, 2023 Judgment Entry and Memorandum Opinion (the "July 7 Judgment").

This Motion is supported by the following Memorandum in Support.

                                    */s/ Fritz Byers*
                                    Fritz Byers (0002337)
                                    414 N. Erie Street, 2nd Floor
                                    Toledo, Ohio 43604
                                    Telephone:  (419) 241-8013
                                    Fax:  (419) 241-4215
                                    Email:  fritz@fritzbyers.com

Matthew T. Kemp (0093136)
Peter R. Silverman (0001579)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Telephone: (419) 321-1206
Fax: (419) 241-6894
E-Mail: mkemp@shumaker.com
          psilverman@shumaker.com

*Attorneys for Plaintiffs/Counterclaim Defendants*
*Block Communications, Inc. and*
*BCI Mississippi Broadband, LLC*

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION

The Court's July 7 Judgment denied Plaintiff's Motion to Disqualify Houlihan Lokey due to a conflict of interest.  Plaintiffs' pending appeal challenges that ruling.

Houlihan Lokey has expressed, with considerable adamancy, its intention to move forward with its work, despite plaintiff's unequivocal conviction that Houlihan's work is tainted by, at the least, apparent conflicts and associated shortfalls in candor.  In the absence of a stay, if the July 7 judgment is reversed on appeal the result will be both senseless and harmful: first, during the pendency of the appeal Houlihan Lokey will have performed work that is of no consequence; and second, all concerned will have undertaken an enormous amount of wasted time, effort, and resources, both human and financial.

In contrast, a stay will cause no harm to any party.  A delay in work performed under a cloud scarcely constitutes the kind of harm that should be cognizable in considering the respective rights of litigants.

2

In sum, the equities balance overwhelmingly in favor of a stay.  These points are made in more detail below.

## II.     PROCEDURAL BACKGROUND

On May 2, 2023, Plaintiffs filed a Motion to Disqualify Houlihan Lokey as the neutral third-party valuation firm selected by the Court. (Doc # 115.)  Plaintiffs' motion was based on the appearance of impropriety that arose when Moorgate Capital Partners, LLC ("Moorgate")—without disclosure to BCI or the Court—hired as a managing director a managing director who had recently departed from Houlihan Lokey.  On July 7, 2023, after briefing and oral argument, the Court denied Plaintiffs' Motion.  (Doc # 119, 120.)  On July 17, 2023, Plaintiffs filed a Notice of Appeal.  (Doc # 122.)

## III.    LEGAL STANDARD

Fed. R. Civ. P. 62(d) provides:

> While an appeal is pending from an interlocutory order…that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

In considering a motion under Rule 62(d), the court equitably balances the familiar "interrelated considerations": (1) the merits of the appeal; (2) irreparable injury to the movant; (3) substantial injury to other parties; and (4) the public interest.  *Cremeans v. Taczak*, No. 2:19-CV-2703, 2020 WL 9076280, at *1 (S.D. Ohio Apr. 7, 2020), quoting *Simon Prop. Grp., Inc. v. Taubman Centers, Inc.*, 262 F. Supp. 2d 794, 797 (E.D. Mich. 2003)).

That these considerations are "interrelated," and that none is independently dipositive, is abundantly clear from the controlling precedents.  For instance, where, as here, the threat of harm to the movant is great, the movant need not establish a high probability of success on the merits.  *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  Both law and logic lead to the conclusion that these factors bear an inverse relationship to each other. "Simply stated, more of one excuses less of the other." *Id.*  Provided that the movant shows that the appeal raises serious questions going to the merits, as does the appeal here, the court's balancing shifts to whether threat of irreparable harm to the movant decidedly outweighs any potential harm to the defendant if a stay is granted.   *Id.* at 153-54. In this instance, that is decidedly the case, as shown below.

## ARGUMENT

### A.  Plaintiffs' appeal will present serious questions on the merits.

The Court declined to accept Plaintiffs' arguments as to why Houlihan Lokey should be disqualified.  Plaintiffs respect that ruling, but with equal respect they suggest that the Court acknowledge that the arguments in support of disqualification were substantial, and that the appeal will present serious questions for the appellate court's review.  Merely by way of illustration, the applicable precedents, as well as the Court's review of the issue in its July 7 opinion, make clear that there is a serious argument that the judicial-disqualification standard of 28 U.S.C. § 455(a) applies to Houlihan Lokey.  The Court's grant of its imprimatur to Houlihan Lokey is fundamental to an understanding of that firm's role in these proceedings. There is, therefore, necessarily a significant legal question to be decided on appeal: the effect of the Court's ruling on the proper characterization of Houlian Lokey's role.  The plaintiff's argument, rooted in precedent and analogy, that Houlihan's role in this matter is tantamount

to the kind of judicial function to which the § 455(a) did not persuade this Court.  But the argument is logically sound, and, beyond cavil, it raises serious questions on the merits for the Sixth Circuit to decide.

Further, there is a serious question as to whether Chuck Wiebe's undisputed connections to Houlihan Lokey's valuation team, and his subsequent high-level position at Moorgate, create at a minimum an appearance of impropriety.  While the analogies to the many cases involving judicial law clerks may be illuminating, they are far from controlling. And in this instance, they lack an essential ingredient that is present here: the aura of impropriety that comes, unavoidably, from entanglements of a *financial* nature.  While it may be true that, at least for now, Supreme Court Justices can create such appearances with impunity, all other judicial officers are significantly constrained in the domain of financial relationships.  And it is unalterably clear, here, that, at least as a matter of appearance, Mr. Wiebe's mid-road departure creates a structural problem in the relationship between Houlihan Lokey and Moorgate, a problem rooted in the unavoidable fact that Moorgate stands to benefit financially in direct proportion to Houlihan Lokey's conclusions.  The current culture around the judiciary is rife with deeply held concerns about such appearances of financial entanglement.  The Sixth Circuit will doubtless treat this issue with the seriousness it deserves.

Finally, although the defendant has expressed its intention to file a motion to dismiss the interlocutory appeal, plaintiff believes the Court's July 7 order falls squarely within the controlling statute: that order declines to modify an injunction (to wit, the Court's specific-performance decree) and as such it is appealable under 28 U.S.C. §1292(a)(1).

**B. Absent a stay, BCI will be forced to participate in a valuation process tainted by the appearance of impropriety arising from intertwined financial interests, which in itself is an irreparable injury**

Houlihan Lokey has notified the parties that it anticipates providing a draft report to the parties by July 26, 2023.  The parties will then have an opportunity to comment on this draft report, and Houlihan Lokey will deliver the final report by August 30, 2023.  In the absence of a stay, this process will proceed while the issue of Houlihan Lokey's conflict-of-interest is itself being litigated in parallel on appeal.  That sentence alone, and the inherent problem it identifies, is probably sufficient to demonstrate the irreparable injury: the absence of a stay will subject a litigant to a process tainted by the appearance of impropriety while the appellate court determines whether that appearance is sufficient to mandate disqualification.

The Sixth Circuit, following Supreme Court precedent, has resoundingly held that "judicial impartiality is a 'vital state interest' protected by the Due Process Clause." *Carey v. Wolnitzek,* 614 F. 3d 189, 200 (6th Cir. 2010), quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009).  Following this bedrock principle, District Courts in the Sixth Circuit have likewise consistently ruled that "judicial impartiality is critical to due process." *See, e.g., Ohio Council 8 American Federation of State, County, and Mun, Employees, AFL-CIO v. Brunner*, 912 F. Supp. 2d 556, 563, (S.D. Ohio 2012), citing *Carey, supra,* 614 F. 2d at 204.

In line with this fundamental foundation of the judicial process, the United States Supreme Court, the Sixth Circuit, and District Courts throughout the Circuit have long and consistently held that the loss of constitutional rights, specifically including the right to due process, creates irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373 (1976)(loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Obama for Am v. Husted,* 697 F. 3d 423, 436 (6th Cir. 2012)("When constitutional rights are

6

threatened or impaired, irreparable harm is presumed); *Obergefell v. Kasich,* 2013 WL 3814262, Case No. 1:13-cv0501, (S.D. Ohio 2013) ("In fact, 'when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary'", *Id.*, quoting 11A Fed. Prac & Proc. Civ. §2948.1 (2d ed.); *Friedmann v. Parker*, 573 F. Supp 1221 (M.D. Tenn. 2021)(deprivation of due process constitutes irreparable harm); *Doe by and through Frazier v. Hommrich,* Case No. 3-16-0799, 2017 WL 1091863, M.D. Tenn 2017)(same).

This conclusion is entirely sensible, for it aligns with the settled doctrine that an injury is "irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F. 3d 566, 578 (6th Cir. 2002). And, in turn, "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott,* 973 F. 2d 507, 511 (6th Cir. 2002).

One struggles to imagine how, in the absence of a stay, the judicial process would calculate the damage plaintiffs will suffer from being forced to proceed with a tainted process. True, if, as plaintiffs anticipate, the Sixth Circuit rules that plaintiff's motion to disqualify should have been granted, the parties would then presumably start from scratch, and Houlihan's work would be discarded. But that end result would not, indeed could not, properly redress the irreparable harm visited on Plaintiffs from the interim exposure to an improperly skewed judicial or quasi-judicial process

## C. A stay will not substantially injure Defendants.

A stay pending appeal will not substantially injure Defendants. If the Court of Appeals affirms the July 7 Judgment, the only practical effect of the stay will be a modest delay in the completion of the valuation process. And, on the other hand, if the Court of Appeals reverses

the decision, the Defendants, like Plaintiffs, will have benefited from the immediate cessation of work by a supposedly neutral party who does not meet the appropriate standard of impartiality that all litigants should aspire to uphold. And any harm such a result would visit on defendants would be limited to removing any untoward influence the appearance of conflict might have, even if unwittingly, on the valuation process.

### D. The public interest favors a stay, which will ensure that concerns about appearance of impropriety are fully considered by the Court of Appeals prior to Houlihan Lokey's final report.

The very same precedents that establish the due-process right to judicial and quasi-judicial impartiality establish that the interest in impartiality extends beyond litigants to the public generally.   In *Carey,* the Court of Appeals expressly recognized this seamless relationship:

> Litigants have a due process right to a trial before a judge with no 'direct, personal, substantial pecuniary interest' in the outcome, ... and the legitimacy of the judiciary rests on delivering on that promise and in furthering the public's trust in the integrity of its judges."

*Carey, supra,* 614 F. 3d at 204 (internal citations omitted) (emphasis supplied). *See also Ohio Council 8 American Federation, AFL-CIO v. Brunner*, 912 F. Supp. 2d 556, 563–64 (S.D. Ohio 2012); *Billops v. Target Corporation*, 4:12-CV-15395-TGB-MKM, 2022 WL 16950260, at * 4 (E.D. Mich. Nov. 15, 2022) ("A judge's duty to maintain impartiality and avoid even the appearance of potential bias is central to the fair administration of justice."); *accord Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1988) (the purpose of disqualification "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible").

To be sure, this civil action is a private dispute in which the public has no strong interest.  But to the extent the public interest does weigh in the Court's required balancing of factors, the only appreciable interest of the public is in the vindication of the central necessary tenet of public confidence in the judiciary, which is the precept of impartiality.  At a time when that precept is perhaps under more scrutiny than at any time in our history, this interest ought not be overlooked.

### E.  Conclusion.

For the reasons set forth above, plaintiffs respectfully request that the Court stay Houlihan Lokey valuation process, pending Plaintiff's appeal of the Court's July 7, 2023 Judgment Entry and Memorandum Opinion (the "July 7 Judgment").

*/s/ Fritz Byers*
Fritz Byers (0002337)
414 N. Erie Street, 2nd Floor
Toledo, Ohio 43604
Telephone:  (419) 241-8013
Fax:  (419) 241-4215
Email:  fritz@fritzbyers.com


Matthew T. Kemp (0093136)
Peter R. Silverman (0001579)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Telephone:  (419) 321-1206
Fax:  (419) 241-6894
E-Mail:  mkemp@shumaker.com
       psilverman@shumaker.com

*Attorneys for Plaintiffs/Counterclaim Defendants*
*Block Communications, Inc. and*
*BCI Mississippi Broadband, LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 24, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Fritz Byers*
Fritz Byers