# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO,
# WESTERN DIVISION

| | |
|---|---|
| BLOCK COMMUNICATIONS, INC., *et al.*, | Case No. 3:18-cv-01315-JJH |
| | Judge Jeffrey J. Helmick |
| Plaintiffs-Counterclaim Defendants, | |
| v. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY VALUATION PENDING APPEAL, WITH MEMORANDUM IN SUPPORT** |
| MOORGATE CAPITAL PARTNERS, LLC, and MOORGATE SECURITIES, LLC, | |
| Defendants, | |
| and | |
| LMC SOUTHEAST CABLE PARTNERS, LLC, | |
| Defendant-Counterclaim Plaintiff. | |

## REPLY MEMORANDUM

Defendant LMC's has lodged extensive objections to BCI's requested stay of the valuation proceedings in this case, but these objections are uniformly lacking in merit. Contrary to LMC's claims: (1) BCI's motion is undeniably addressed to injunctive orders issued by this Court, and Rule 62(d), F.R.Civ.Proc., therefore applies; (2) BCI's has shown more than sufficient likelihood of success in the appeal that is the occasion for the requested

stay, and certainly more than is required to satisfy Rule 62(d)'s requirements; and (3) in the absence of a stay, BCI will be irreparably harmed, while LMC will incur *no* cognizable irreparable harms, so that the balance of harms to the parties and the public interest weigh decidedly in favor of a stay.

**(1) Rule 62(d) applies to a stay of this Court's injunctive specific-performance orders.**

LMC begins its argument with the remarkable assertion that "[t]here is no injunction at issue here." *Memorandum of Law*, Doc. 124, PageID #10078. This is baffling.

The parties' contracts provided that the value of MaxxSouth would be determined "by the mutual agreement of [the parties] or, in the event the parties are unable to agree *** then by an independent third party valuation firm reasonably acceptable to [the parties]." *Memorandum Opinion & Order*, Doc. 70, PageID #8979. In its counterclaim, LMC expressly demanded **"specific performance**, including an order requiring BCI to perform its obligations in good faith under the Management Agreement to determine the Terminal Company Enterprise Value of MaxxSouth, as of March 31, 2018, and to pay the resulting Incentive Fee." *Answer of Defendants ... and Counterclaims of Defendant LMC*, Doc. 18, PageID #133 & #134 (emphasis added).

This Court's summary-judgment decision "order[ed] BCI and LMC SE to comply with their contractual obligations to select a third-party valuation firm to determine the Terminal Company Enterprise Value." Doc. 70, PageID #8981. The Court expressly framed this command as an order of specific performance. *Id.* PageID #8980. When the parties (and

their own separately selected valuators) failed to agree on a mutually acceptable valuation firm, the Court modified its order and required the parties to nominate slates of valuation firms. *Order*, June 3, 2021, Doc. 75, PageID #8991. The Court then selected one of the nominees (Houlihan Lokey) and ordered the parties to engage that firm to conduct the contractually required valuation. *Order*, Jan. 3, 2022, Doc. 100, PageId #9874; *Order*, June 7, 2022, Doc. 104, PageId #9926 & #9927.

These orders are unquestionably orders of specific performance. They commanded the parties to carry out a contractual obligation, they did so under penalty of contempt (*see* F.R.Civ.Proc., Rule 70), and they provided the precise relief on the merits that one of the parties had prayed for in the pleadings. And any such specific-performance order is by definition an injunction. *Preferred Care of Delaware, Inc. v. Estate of Hopkins*, 845 F.3d 765, 770 (6th Cir. 2017) ("An order 'compelling' parties to do something, when it resolves the merits of the dispute, *is* an injunction – an order of specific performance on the merits."). *See also Abercrombie & Fitch Co. v. Federal Ins. Co.*, 370 Fed. Appx.563, 567-568 (6th Cir. 2010) (a specific-performance decree is an injunction if it "is enforceable by contempt, and is designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary fashion"); *Satyam Computer Services, Ltd., v. Venture Global Engineering*, LLC, 2006 WL 2571581 (E.D. Mich., Sept. 5, 2006) at *2 (regarding a request for stay pending appeal within Rule 62, "specific performance is a typical form of injunctive relief").

The character of the Court's directives as specific-performance orders is true as to the entire series of the Court's entries, including specifically the orders of January 3 and June 7,

2022, selecting Houlihan Lokey and then directing the parties to engage that firm as the valuation firm specified by the parties' agreement. Doc. 100; Doc. 104. Indeed, those orders could hardly be anything other than part of a specific-performance decree, because there is no other conceivable basis for them if they were not specific-performance orders.[1] The parties' contractual obligation was to select a valuation firm. The Court's original order commanded them to do so, and the subsequent orders commanded them specifically to engage Houlihan Lokey. That the Court itself recognized this at the time is evident from the form of the orders, in which the Court did not directly appoint Houlihan as it would appoint, for example, an equity receiver. *See* 28 U.S.C. § 3103(a). Instead, the Court specifically ordered the parties themselves to engage Houlihan in specific fulfillment of their specific contractual obligation to select an independent third-party valuation firm.

The Houlihan-Lokey orders are injunctive specific-performance decrees, and a stay of those orders is governed by Rule 62(d).[2]

---

[1] The parties' failure to agree on a selection could be remedied by the standard contract remedies: either damages or specific performance. A damages remedy, of course, could not be accomplished by having the Court direct the parties to hire a specified expert to decide the value of MaxxSouth. *See Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (parties cannot be required to arbitrate when they have not agreed to do so); *In re LaMarre*, 494 F.2d 753, 756 ("no judge can compel a settlement prior to trial on terms which one or both parties find completely unacceptable"). A determination of damages would require, rather, a trial at which the parties could each present their own evidence of value and at which the value would be decided by the trier-of-fact on the basis of that evidence. Whether the Court could, as a matter of specific-performance law, take the course that it did here is not at issue on this motion (or on the pending appeal). What is evident, however, is that if the 2022 orders were not specific-performance orders, they were then wholly unfounded in law.

[2] In a curious footnote, LMC demands that the Court refuse to even consider any arguments "as to why there is an 'injunction' or why [Rule 62(d)] purportedly applies," apparently on the ground that somehow BCI would thereby be invoking the injunctive character of the Court's orders "for the first time." Doc. 124, PageID #10079, n. 3. This is bizarre. As described above, the

**(2) BCI's request for stay satisfies Rule 62's standards for the prospects of success on appeal.**

In support of its view that BCI cannot show any prospect of success on the merits of its appeal to the Sixth Circuit, LMC argues first that the appeal will fail for want of appellate jurisdiction. Rather than actually argue the point, LMC attaches a copy of the memorandum it filed in the Sixth Circuit in support of a motion to dismiss the appeal. Far from establishing an "obvious" or "plain" jurisdictional defect, however, LMC's argument-by-incorporation is wrong – as is fully described by BCI's Sixth Circuit memorandum in response to the motion (attached as an Exhibit to this memorandum).

In brief, review of this Court's order is authorized by 28 U.S.C. § 1292(a)(1), which gives the Courts of Appeals jurisdiction of appeals from, among other things, "[i]nterlocutory orders of the district courts of the United States *** refusing to *** modify injunctions ***." As described above, this Court's orders were undeniably injunctive specific-performance decrees, and a refusal to modify them falls squarely within the statute's terms. Likewise, this Court's denial of BCI's disqualification motion was necessarily a refusal to modify the portions of those orders that directed the parties to engage Houlihan Lokey as the independent third-party valuation firm – and that is true whether or not the motion used the words "modify" or "injunction." An appeal will lie under § 1292(a)(1) even "upon

---

character of the orders as injunctive is self-evident, and was evident to the Court beginning with the original order. Moreover, BCI filed a motion for stay under Rule 62(d) (which is specifically captioned as governing stays of "Injunctions Pending an Appeal") and expressly described this Court's "injunction (to wit, the Court's specific-performance decree." LMC then expended great energy in response insisting that there is no injunction here. And now, according to LMC, BCI cannot be permitted to refute LMC's argument because this is the first that LMC has ever heard about injunctions?

disposition of motions that do not explicitly seek modification or dissolution. The inescapable effect of denying a motion may be refusal to modify or dissolve an outstanding injunction." Wright, Miller, & Cooper, *Federal Practice & Procedure: Jurisdiction & Related Matters* § 3924.2 (3d ed., Apr. 2023 update). *See, e.g., Citizens Against Pellissippi Pkwy. Extension, Inc. v. Mineta*, (6th Cir. 2004), 375 F.3d 412, 416; *Linville v. Teamsters Misc. & Indus. Workers Union, Local 284*, 206 F.3d 648, 650 (6th Cir. 2000).

As to BCI's prospects of success on the merits of the appeal, LMC contents itself with saying that BCI is "essentially asking this Court to re-engage in the same analysis" that led to entry of the order on appeal and that there is "no intervening change in law or fact" that would warrant reconsideration. Doc. 124, PageID #10081.

This contention appears to rest on a fundamental confusion about the standard to be applied by District Courts in addressing requests for stays. As one District Court has noted, in considering the probability-of-success standard, "it is unlikely that a district court would ever be able to find that defendants will be likely to succeed on the merits of their appeal. To make such a finding, the district court would be saying that it erred in not granting defendant's original motion ***, and that the court of appeals is likely to reverse its decision." *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Securities Corp.*, 716 F.Supp. 307, 309 (W.D. Tenn. 1989). As the *C.B.S. Employees* court recognized, the question is not whether the District Court agrees with the position taken by the party seeking an appellate stay or whether appellate reversal is probable. *Id.* The question is, rather, whether, the appeal raises "serious questions" about the correctness of the District Court's order. *Michigan*

*Coalition of Radioactive Materials Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-154 (6th Cir. 1991). That standard – which is the actual standard – is more than sufficiently satisfied here, as already fully discussed in BCI's original memorandum, and LMC offers nothing to rebut the arguments BCI made there.

**(3) The balance of harms and of the public interest weighs decidedly in favor of a stay.**

LMC contends that BCI will suffer no irreparable injury in the absence of a stay but that the stay would "substantially injure" LMC. Doc. 124, PageID #10081-#10083. As to the public interest, LMC insists that refusing the requested stay will advance the public interest in obtaining adherence to contractual obligations, enforcing court orders, and maintaining expediency in ligitation.

LMC's dismissal of the harm to BCI's due-process rights is understandable in view of LMC's absolute conviction that BCI's appeal will be dismissed on jurisdictional grounds. But that is not the perspective from which *the Court* is required to assess the injury. It is undeniable that if BCI is forced to proceed, and if the appealed order is then reversed, there is no means by which BCI will thereafter be able to undo or redress the non-compensable and irreparable injuries to its rights that it will have suffered in the interim. LMC may believe that those injuries cannot be inflicted, but that is only because LMC believes the order in question will be affirmed. Notably absent from LMC's memorandum is any suggestion that the identified injuries would be anything other than genuine and irreparable in the event of an appellate reversal.

Similarly mistaken are LMC's claims of injury to its own interests if the stay is granted. LMC argues that a stay will increase its costs and expenses (though it doesn't say how) and will "further prolong this litigation." Doc. 124, PageID #10083. Those classes of injuries are hardly material to the propriety of a stay, since they are the kinds of costs that inhere in the grant of *any* stay pending appeal. They are, moreover, costs that will arise, if at all, only in the event the appealed order is affirmed. If, by contrast, the order is reversed, the result of the stay will be an *avoidance* of costs as to all parties, since that much less of Houlihan Lokey's work will need to be redone on remand.[3]

Finally, LMC's boilerplate contentions about the sanctity of contracts and the enforcement of court orders cannot withstand scrutiny, not least because they assume the answer to the questions in issue. The parties' actual contracts are to be enforced, which in this case means valuation by an "**independent** third-party valuation firm" (emphasis added). Proceedings to determine whether the selection of Houlihan Lokey conforms to that contractual requirement are hardly efforts to avoid contractual obligations. To the contrary, they advance the public interest in contract enforcement. So too, the public interest in fair and regular proceedings favors the availability of effective appellate review of injunctive specific-performance orders, and invoking that review cannot be "flouting" or

---

[3] LMC cites *Grass Lake All Seasons Resort, Inc. v. United States*, No. 01-74386, 2005 WL 3447869, at *3, for the proposition that a delay in receiving the proceeds of a property sale was a sufficient basis to deny a stay. *Grass Lake* involved a request for stay of a *final* judgment of foreclosure in a tax-lien case that had been litigated for ten years, and the court expressed concern that delays would reduce the amount of the proceeds from the sale due to accruing state-law real-estate liens. *Id.* Notably, earlier in its opinion, the *Grass Lake* court pointed out that in a commercial setting "financial loss to an artificial entity [a corporation]" (such as LMC here) was not sufficient as an irreparable injury warranting a stay. *Id.*

"sidestep[ping]" the orders under review.

The balance of the parties' interests and the public's interest weigh substantially in favor of BCI's request for a stay pending appeal.

### Conclusion.

For the foregoing reasons, BCI's Motion to Stay Valuation Pending Appeal should be granted.

    /s/ *Fritz Byers*
Fritz Byers (0002337)
414 N. Erie St., 2nd Floor
Toledo, Ohio 43604
Telephone: (419) 241-8013
Fax: (419) 241-4215
E-mail: fritz@fritzbyers.com


Matthew T. Kemp (0093136)
Peter R. Silverman (0001579)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Telephone: (419) 321-1206
Fax: (419) 241-6984
E-mail: mkepmt@shumaker.com
        psilverman@shumaker.com

*Attorneys for Appellants*
*Block Communications, Inc. and*
*BCI Mississippi Broadband, LLC*

## CERTIFICATE OF SERVICE

This will certify that on August 14, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                /s/ *Fritz Byers*
                                          Fritz Byers (0002337)