UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Block Communications, Inc., *et al.*,                                    Case No. 3:18-cv-1315

          Plaintiffs,

v.                                                                                                    ORDER

Moorgate Capital Partners, LLC, *et al.*,

          Defendants.

On December 21, 2023, following Houlihan Lokey's submission of its final valuation report, I ordered the parties to meet and confer regarding next steps in this case and to provide their respective positions via email to my chambers no later than December 29, 2023. (Doc. No. 134). The parties timely submitted their status report by email and subsequently filed the status report at my request. (Doc. No. 135).

Defendants contend the only remaining issues in this case involve the final calculation of the Incentive Fee due under the MaxxSouth Agreement, prejudgment interest, and attorney fees and costs. Defendants request that I set a briefing schedule to resolve these final matters. (*Id.* at 2-3).

Plaintiffs disagree. They first argue this court lacked the equitable power to select a third-party valuation firm after the parties failed to select a firm pursuant to my prior orders. Plaintiffs contend that, because I did not conclude the parties' failure to select a valuation firm "was a product of anything other than a failure to agree," I could no longer order specific performance of the

parties' contract and instead was required to set the case for trial on the merits of Defendants' counterclaim.  (*Id.* at 5).  They further contend that my selection of the third-party valuation firm was an impermissible use of the court's equitable authority which created a new contractual term to which the parties had not agreed.

A brief review of the underlying claim and its history in this case is in order.  BCI entered into a Management Agreement with LMC SE pursuant to which LMC SE would manage the day-to-day operations of BCI's wholly owned subsidiary, MaxxSouth.  The Management Agreement called for LMC SE to be paid a monthly management fee and also provided for an incentive fee "based upon MaxxSouth's value at the time of a future sale or the termination of the Management Agreement," which would be "determined by mutual agreement or by 'an independent third party valuation firm . . . based upon an analysis of the recent prices paid by purchasers of similar companies under similar circumstances.'"  (Doc. No. 70 at 4) (quoting Doc. No. 49-8 at 32-33, 38-39).[1]

After Plaintiffs filed suit, Defendants filed a counterclaim alleging BCI breached the Management Agreement by refusing to participate in the valuation process.[2]  I granted Defendants' motion for summary judgment on their breach of contract counterclaim after noting Plaintiffs admitted "LMC SE provided a list of firms and that BCI did not engage in a discussion with LMC SE about those firms or provide its own list of firms."  (Doc. No. 70 at 21) (citing Doc. No. 49-1 at 116-17).

---

[1]  My earlier opinion erroneously cited pages 34, 35, 40, and 41 of Docket Number 49-8 for this quotation.

[2]  Defendants also moved for summary judgment on their related claim that BCI breached the implied duty of good faith and fair dealing when it failed to perform its required duties under the contract.  I denied that motion after concluding there was an issue of material fact concerning BCI's motivations for failing to perform its duties.  (Doc. No. 70 at 21-22).

As I stated in ruling on Defendants' motion, the Management Agreement "does not provide a next step in the event the parties were unable to agree on a valuation firm." (Doc. No. 70 at 22). I further noted:

> Ohio law, however, fills this contractual gap. A court considering a breach of contract claim involving a contractual alternate dispute resolution provision has "power to compel specific performance of a contractual agreement to participate in" the parties' agreed-upon method of alternate dispute resolution. *Palumbo v. Select Mgmt. Holdings, Inc.*, 2003-Ohio-6045, 2003 WL 22674397, *3 (Ohio Ct. App. Nov. 13, 2003) (citing *Oglebay Norton Co. v. Armco, Inc.*, 556 N.E.2d 515, 521 (Ohio 1990)); *see also Ohio Council 8, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 459 N.E.2d 220, 223 (Ohio 1984) (Parties which agree to submit a subject in dispute to a third party for resolution will be bound by the third party's decision.).
>
> LMC SE argues it should not be required to engage in the valuation process and instead should be awarded damages in the amount calculated by its expert witness. This argument is not persuasive. The Management Agreement does not establish that the Incentive Fee provision operates for BCI's benefit. (*See* Doc. No. 49 at 46). Nor does LMC SE establish the contractual valuation mechanism is "so fundamental to the contract that [BCI's] failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Becker v. Direct Energy, LP*, 112 N.E.3d 978, 989 (Ohio Ct. App. 2018) (citation and internal quotation marks omitted). Moreover, the "normal remedy for a breach of contract claim is to give the injured party such relief as will put him in as good a position as if the contract had been performed." *Tucker v. Young*, 2006-Ohio-1126, 2006 WL 574309, *7 (Ohio Ct. App. Mar. 6, 2006) (citations omitted).
>
> Therefore, I order BCI and LMC SE to comply with their contractual obligations to select a third-party valuation firm to determine the Terminal Company Enterprise Value. *See, e.g., Mr. Mark Corp. v. Rush, Inc.*, 464 N.E.2d 586, 591 (Ohio Ct. App. 1983) (A court ordering specific performance of a contract "may establish and direct procedures to accomplish that performance, so long as those procedures neither add to nor detract from significant obligations of the parties which have been established by the contract . . . ."). BCI and LMC SE each shall identify three valuation firms and exchange the names of those firms, ranked in order of preference, on or before April 15, 2021. If, following this exchange, the parties are unable to agree upon a firm, the parties' first-ranked choices shall select the third-party valuation firm which shall conduct the valuation. That valuation shall constitute the Terminal Company Enterprise Value and shall be used to calculate the Incentive Fee. . . . BCI and LMC SE shall equally share the cost of the valuation.

(*Id.* at 22-23). Thus, Ohio common law provided the remedy for Plaintiffs' breach of the parties' contract.

Plaintiffs did not object to my resolution of this matter after I issued my ruling on the summary judgment motion on March 1, 2021. They did not object two months later, after the parties failed to agree to a third-party valuation firm as ordered, instead advocating that the parties progress to the second stage of my resolution order, which directed "that the parties' first-ranked choices attempt to select a third-party valuation firm to conduct the valuation." (Doc. No. 73 at 2). Nor did Plaintiffs object during a telephone status conference held on June 2, 2021, after I had given the parties another month in which to comply with my order. (*See* Doc. No. 75).

It is true, as Plaintiffs point out, that at that point I did not conclude "[t]he parties' failure [to agree] was a product of anything other than a failure to agree." (Doc. No. 135 at 5). Rather than questioning the parties' motivations or issuing a show cause order requiring the parties to appear in court and explain why they failed to comply with my explicit, unambiguous order, I instead gave the parties a fourth opportunity to do what my order required. (Doc. No. 75 at 1) (ordering the parties to file a status report no later than June 30, 2021, identifying the third-party valuation firm selected by the parties' first-ranked choice).

It is well established that "trial courts have inherent power to control their dockets." *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 516 (6th Cir. 2003) (citing cases). The Supreme Court "has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-31 (1962)). These inherent powers include the power to hold parties in contempt. "The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable." *Cooke v. United States*, 267 U.S. 517, 539 (1925).

4

In responding to the parties' failure to comply, I adopted Chief Justice Taft's note of "caution" that the exercise of the contempt power "is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions." *Id.* Thus, in an attempt to avoid contempt proceedings in the event the parties continued to fail to comply with my order that their first-ranked choices select the third-party valuation firm, I ordered the parties to identify potential valuation firms and invited them to provide "argument for the merit selection of each proposed candidate" and to submit "any pertinent framework for selecting a valuation firm from the choices provided." (Doc. No. 75 at 2).

Plaintiffs again did not object to this court-ordered procedure. To the contrary, Plaintiffs proposed an <u>even broader approach</u> which explicitly incorporated the procedure I included in my order:

> [C]hoosing one side's valuator over the other may be perceived as unfair to the other side. Instead, this Court could, consistent with the Parties' Agreement, adopt a commonly used valuation method . . . (when there is a high chance of disagreement concerning value): each side selects one valuator and a third is selected by those two. If the party-appointed valuators cannot agree on a third, then the Court appoints the third valuator. … [I]n the event the Court declines to select one of BCI's proposed valuators, **BCI asks the Court to order the use of the three-valuator method**. Each of the three valuators would come to an independent conclusion about value and the two closest valuation findings would be averaged to arrive at the final number. Ordering this process neither adds to nor detracts from the significant obligations in the Agreement and the Court may, in its equitable power, employ this method to complete the valuation.

(Doc. No. 78 at 6) (emphasis added).

I ultimately declined to adopt Plaintiffs' proposal, noting that Plaintiffs' proposal in part would require the parties and the court to repeat the procedure I previously ordered as well as substantially increase the costs associated with the process. (Doc. No. 100 at 2-3).

Plaintiffs did not object to my selected procedure at this point. Nor did they object to it 14 months later, when they moved to disqualify Houlihan Lokey as the third-party valuation firm because of the alleged appearance of a conflict of interest. (Doc. No. 115).

It is only now, after Houlihan Lokey issued its final report and just shy of 33 months after I ordered specific performance of the parties' agreement, that Plaintiffs pursue the argument that the entire process should be scrapped, my summary judgment ruling should be "terminated," and the case instead be set for trial during which the parties would present competing "expert valuation testimony." (Doc. No. 135 at 5-6). According to Plaintiffs, my selection of Houlihan Lokey as the third-party valuation firm is "the creation of judicial action of a new contract term to which the parties did not assent." (*Id.* at 5).

I disagree. I did not create a new contract term but instead expressly ordered the parties to perform their contractual duties, consistent with Ohio law. (*See, e.g.,* Doc. No. 70 at 22-23). After they failed to do so, Plaintiffs themselves advocated for a <u>more expansive</u> procedure than the one I ordered. Plaintiffs' eleventh-hour assertion that they did not "assent" to the valuation process through their filings in this court, and through their course of conduct over nearly three years, is not credible. Whatever disagreements Plaintiffs have with my summary judgment ruling may be presented on appeal at the appropriate time. *See, e.g., Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991).

Plaintiffs' second and third arguments are related. In both points, Plaintiffs contend that, even if I have the authority to select Houlihan Lokey as the third-party valuation firm, Houlihan Lokey's report does not comply with the requirements of the valuation provision of the parties' agreement. (Doc. No. 135 at 6-9). Plaintiffs argue I must either "set this cause for trial on the merits of LMC's claim for damages" or hold a "full evidentiary hearing" regarding the Houlihan Lokey report. (*Id.* at 8, 9). Plaintiffs contend they are entitled to conduct expert discovery prior to either of these proceedings. (*Id.*).

Plaintiffs' calls for further discovery and a trial are premature. But I agree the parties must have the opportunity to demonstrate why the Houlihan Lokey report complies with the terms of the

6

Management Agreement and my orders or, conversely, why it does not.  (*See* Doc. No. 49-8 at 33) ("[T]he Enterprise Value shall be determined based upon an analysis of the recent prices paid by purchasers of similar companies under similar circumstances.").

Therefore, I order the parties to file their respective briefs regarding the acceptability of the Houlihan Lokey final report on or before March 18, 2024.  Responsive briefs may be filed no later than April 8, 2024.  The initial briefs may not exceed 20 pages in length, response briefs may not exceed 15 pages in length, and no reply briefs may be filed, without good cause shown and prior leave of court.  Further briefing regarding prejudgment interest and attorney fees is held in abeyance.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge